UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                           Case No. 06-43993

TRANS-INDUSTRIES, INC., *et al.*,                Chapter 7
                                                 (Jointly Administered)[1]
                    Debtors.                     Judge Thomas J. Tucker
_____/

DAVID W. ALLARD,

                    Plaintiff,

v.                                               Adv. Pro. No. 07-6790

DALE S. COENEN, KAI R. KOSANKE,
RICHARD A. SOLON, and DELMAR
E. FIELDS,

                    Defendants.
_____/

**OPINION REGARDING DEFENDANT'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

In this adversary proceeding, the Chapter 7 trustee asserts multi-million dollar claims

against three alleged fiduciaries of the Debtor's pension plan. One of the defendants has filed a

motion to dismiss, challenging this Court's subject matter jurisdiction. Although the motion

raises novel issues, the Court concludes that it has jurisdiction.

**I. Introduction**

The Chapter 7 trustee, David W. Allard, filed this adversary proceeding against three pre-

petition fiduciaries of the Debtor's pension plan, seeking damages for alleged breaches of

_____

[1] This case (*In re Trans-Industries, Inc.*, Case No. 06-43993) is being jointly administered with
the following cases: *In re Transign, Inc.*, Case No. 06-43995; *In re Transmatic, Inc.*, Case No. 06-43997,
and *In re Vultron, Inc.*, Case No. 06-43998. ("Order Pursuant to Fed. R. Bankr, P. 1015 Directing Joint
Administration of This Chapter 11 Case with Three Affiliated Cases" (Docket # 35)).

fiduciary duty and for breach of contract. The Trustee's claims are based on the Employee

Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"), including 29

U.S.C. §§ 1132 and 1109, and on state common law.

The parties agree that the Trustee has standing to pursue the ERISA claims, based on

§ 704(a)(11) of the Bankruptcy Code. That section was added to the Bankruptcy Code in 2005

by the "Bankruptcy Abuse Prevention and Consumer Protection Act of 2005" ("BAPCPA"). It

added a new duty to § 704(a)'s list of the Chapter 7 trustee's duties. That duty applies in any case

where, as here, the debtor was serving as the plan administrator of an ERISA employee benefit

plan when the bankruptcy petition was filed. In such a case, the Chapter 7 trustee must "continue

to perform the obligations required of the administrator." 29 U.S.C. § 704(a)(11).[2]

While BAPCPA added this new trustee duty, it made no related changes to the statutes

governing the bankruptcy court's subject matter jurisdiction, 28 U.S.C. §§ 1334 and 157.

One of the Defendants, Richard A. Solon, has filed a motion to dismiss the Trustee's

claims, arguing that the bankruptcy court lacks subject matter jurisdiction.[3] Solon's argument is

based on the undisputed fact that the Trustee's claims, and any recovery on those claims, belong

to the ERISA pension plan, a legal entity separate from the bankruptcy estate, and not to the

_____

[2] Section 704(a)(11) states:

> The trustee shall . . . if, at the time of the commencement of the case, the debtor (or any entity designated by the debtor) served as the administrator (as defined in section 3 of the Employee Retirement Income Security Act of 1974) of an employee benefit plan, continue to perform the obligations required of the administrator[.]"

11 U.S.C. § 704(a)(11).

[3] "Defendant, Richard A. Solon's, Motion to Dismiss For Lack of Subject Matter Jurisdiction" (Docket # 57).

2

estate. From this premise Solon argues, among other things, that the adversary proceeding

cannot benefit the bankruptcy estate, or otherwise have any effect on the bankruptcy estate,

sufficiently to support bankruptcy court jurisdiction.

For the reasons stated in this opinion, the Court concludes that it has "related to" subject

matter jurisdiction, and therefore must deny Solon's motion to dismiss.

## II. Procedural history and Allard's complaint

On April 3, 2006, Trans-Industries, Inc. ("Trans-Industries" or "Debtor") and three of its

wholly-owned subsidiaries (Transign, Inc., Transmatic, Inc., and Vultron, Inc.) filed voluntary

petitions for relief under Chapter 11. The four cases are jointly administered. On October 17,

2006, these cases were converted to Chapter 7.[4] David W. Allard is the Chapter 7 Trustee in

each case. Allard filed this adversary proceeding against Defendants Dale S. Coenen, Kai R.

Kosanke, Richard A. Solon, and Delmar E. Fields.

The Complaint includes the following allegations. "In 1974, [Debtor Trans-Industries]

established the Trans-Industries, Inc. Salaried Employees' Retirement Plan [("Plan")]. In 1989,

the [P]lan was amended to provide a 401(k) pre-tax savings option, and was renamed the Trans-

Industries, Inc. Employee 401(k) Profit Sharing Plan and Trust."[5] "The Plan was an 'employee

pension benefit plan' as defined in 29 U.S.C. § 1002[(2)](A)," and was governed by [ERISA].[6]

"The Plan was funded through . . . (i) payroll contributions to individual retirement savings

accounts made by participants, (ii) [Trans-Industries] matching cash contributions to eligible

---

[4] Docket # 434 in Case No. 06-43993.

[5] Compl. at 4 ¶ 19.

[6] *Id.* at 7 ¶ 33.

3

participants' accounts, and (iii) transfers and rollovers from certain prior retirement accounts."[7] Debtor Trans-Industries was designated as the "Employer" and "Plan Administrator" under the Plan.[8]

The Complaint further alleges that the Plan named Defendants Coenen and Kosanke as Plan Trustees.[9] In March 2005, Coenen resigned and Defendant Solon replaced him as a Trustee of the Plan.[10] "Defendant . . . Fields was also a Plan fiduciary, and served as the Official Employee Representative . . . to the Plan's Trustees."[11]

The Plan, as amended, "authorize[d] the Trustees [of the Plan] to 'acquire or sell shares of the Employer [Debtor Trans-Industries]' provided that 'no more than 50 percent of the Trust Fund assets shall be invested in such securities at any time.'"[12] Nevertheless, pre-petition, more than 50 percent of the Trust Fund assets consisted of the stock of Trans-Industries.[13]

In 2004 when Fields resigned, and in 2005 when Coenen resigned, each requested and received a lump sum distribution of his vested account balance under the Plan, in the amounts of $1.4 million and $1 million, respectively.[14] The distributions to Fields and Coenen were made possible by "the liquidation of all Plan investments other than [Trans-Industries] stock," which

---

[7] *Id.* at 5 ¶ 20.

[8] *Id.*

[9] *Id.* at 5 ¶ 21.

[10] *Id.*

[11] *Id.* at 5 ¶ 22.

[12] *Id.* at 5 ¶ 23.

[13] *Id.* at 5 ¶ 24.

[14] *Id.* at 6 ¶ 27.

4

was approved by the Trustees of the Plan.[15] "By the time that Debtors sought bankruptcy protection in April 2006, there were few if any assets left in the Plan for the remaining Plan participants, depriving them of virtually all of their retirement savings."[16]

Based on the allegations in the Complaint, the Trustee, in his capacity as administrator of the Plan under 11 U.S.C. § 704(a)(11), seeks entry of a money judgment against the Defendants for breach of fiduciary duties in violation of ERISA (Count I), and for breach of contract (Count II). Defendant Solon's motion seeks dismissal of both counts of the Complaint for lack of subject matter jurisdiction.[17] The Court held a hearing on the motion, and after the hearing, Allard sought leave to file a post-hearing affidavit.[18] The Court granted the request and required the parties to file supplemental briefs.[19]

---

[15] *Id.* at 6 ¶ 28.

[16] *Id.* at 30.

[17] On May 13, 2009, the Court entered an Order dismissing Count II of the Complaint (the state law breach of contract claim) with prejudice, as to Defendant Solon only. (Or. Granting Def. Solon's Mot. For Partial Judgment on the Pleadings (Docket # 77).) Solon had moved for dismissal of that count on the ground that it is preempted by ERISA. The Trustee did not oppose that motion. The Court would have to vacate that earlier order if it concluded now that it lacked subject matter jurisdiction. *See Avitts v. Amoco Prod. Co.*, 53 F.3d 690, 694 (5th Cir. 1995)(holding that because the district court lacked subject matter jurisdiction over the action it "was therefore without authority to enter its orders," vacating the orders of the district court, and remanding the action to state court from which it was removed); *see also Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995)(a judgment is void under Fed.R.Civ.P. 60(b)(4) "if the court that rendered it lacked jurisdiction of the subject matter").

[18] Docket # 107.

[19] "Order Granting Plaintiff's Ex Parte Motion For Leave to File Post-Hearing Affidavit and Requiring Further Briefing" (Docket # 108); Aff. Of David W. Allard (Ex. 1 of Trustee's Supplemental Br. Re. Def. Solon's Mot. To Dismiss (Docket # 121)) at ¶¶ 11-12. Docket ## 119, 121, and 130.

5

## III. Standards applicable to motions to dismiss under Fed. R. Civ. P. 12(b)(1)

Solon brings his motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(h)(3), applicable

to this adversary proceeding through Fed. R. Bankr. P. 7012(b).  Rule 12(b)(1) permits the

defense of "lack of subject-matter jurisdiction" to be asserted by motion.  Rule 12(h)(3) says that

"[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must

dismiss the action."

"A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which

case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for

jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the

burden of proving that jurisdiction exists."  *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir.

2004).  In this case, Solon does not dispute any of the facts asserted by Allard in support of

subject matter jurisdiction.  Therefore, the Court will accept Allard's factual assertions as true for

purposes of deciding the motion.

## IV. Basic principles of bankruptcy court subject matter jurisdiction

This Court has subject matter jurisdiction over "all cases under title 11," and over  "all

civil proceedings" (1) "arising under title 11" or (2)  "arising in" a case under title 11 or (3)

"related to" a case under title 11.[20]

---

[20]  28 U.S.C. §§ 1334(b), 157(a), 157(b)(1), and L.R. 83.50(a) (E.D. Mich.).  Section 157(a) provides that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."  28 U.S.C. § 157(a) (West 1993).  L.R. 83.50(a)(1) (E.D. Mich.) provides:

(a) Matters Referred to the Bankruptcy Judges

(1) Unless withdrawn by a district judge, all cases under Title 11 of the United States

(continued...)

6

A "case under title 11" refers "merely to the bankruptcy petition itself, filed pursuant to 11 U.S.C. §§ 301, 302, or 303." *Michigan Employment Sec. Comm'n v. Wolverine Radio Co., Inc.*, 930 F.2d 1132, 1140 (6th Cir. 1991).  So this adversary proceeding is not a "case under title 11."  Rather, it is a "civil proceeding" within the meaning of 28 U.S.C. § 1334(b), so that, in order for the Court to have jurisdiction, this adversary proceeding must fit one of the three categories of civil proceedings listed in § 1334(b).

"The phrase 'arising under title 11' describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11, and 'arising in' proceedings are those that, by their very nature, could arise only in bankruptcy cases." *Bliss Technologies, Inc. v. HMI Indus., Inc.* (*In re Bliss Technologies, Inc.*), 307 B.R. 598, 602 (Bankr. E.D. Mich. 2004)(quoting *Wolverine Radio*, 330 B.R. at 1144).  These two categories of civil proceedings are "core" proceedings within the meaning of 28 U.S.C. §§ 157(b)(1) and 157(b)(2).  *Id.*[21]  The

---

[20](...continued)
Code and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to bankruptcy judges. The court intends to give bankruptcy judges the broadest possible authority to administer cases and proceedings properly within their jurisdiction.

[21] Section 157(b)(2) contains a non-exhaustive list of "core" proceedings.  It provides:

(2)     Core proceedings include, but are not limited to--

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(continued...)

bankruptcy court can enter final orders and judgments in all "core" proceedings.  28 U.S.C.

§ 157(b)(1).

Civil proceedings that fall only within the third category of the bankruptcy court's

subject matter jurisdiction — its "related to" jurisdiction — are non-core.  In a non-core

proceeding, unless all parties consent, a bankruptcy court cannot enter final orders and

---

[21](...continued)
　　　　(D) orders in respect to obtaining credit;

　　　　(E) orders to turn over property of the estate;

　　　　(F) proceedings to determine, avoid, or recover preferences;

　　　　(G) motions to terminate, annul, or modify the automatic stay;

　　　　(H) proceedings to determine, avoid, or recover fraudulent conveyances;

　　　　(I) determinations as to the dischargeability of particular debts;

　　　　(J) objections to discharges;

　　　　(K) determinations of the validity, extent, or priority of liens;

　　　　(L) confirmations of plans;

　　　　(M) orders approving the use or lease of property, including the use of cash collateral;

　　　　(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

　　　　(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

　　　　(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

8

judgments, but instead must "submit proposed findings of fact and conclusions of law to the district court," and the district court must enter the final order or judgment. 28 U.S.C. §§ 157(c)(1), 157(c)(2).

The Sixth Circuit has adopted the test articulated in *Pacor, Inc. v. Higgins* (*In re Pacor, Inc.*)*, 743 F.2d 984, 994 (3d Cir.1984), for determining "related to" jurisdiction:

> "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

*Wolverine Radio*, 930 F.2d at 1142 (emphasis in original)(quoting *Pacor, Inc. v. Higgins* (*In re Pacor, Inc.*)*, 743 F.2d 984, 994 (3d Cir.1984)(emphasis in original)); *see also Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers of Connecticut* (*In re Dow Corning Corp.*), 86 F.3d 482, 489, 490 (6th Cir. 1996). In enacting § 1334(b), "Congressional intent was 'to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'" *Id.* (quoting *Celotex Corp. v . Edwards*, 514 U.S. 300, 308 (1995)). Proceedings "related to" the bankruptcy case include "more than simple proceedings involving the property of the debtor or the estate." *Celotex Corp. v . Edwards*, 514 U.S. at 308. And such "related to" proceedings include even "suits between third parties which have an effect on the bankruptcy estate." *Id.* at 308 n.5. But the Sixth Circuit has cautioned against finding "related to" jurisdiction in "situations . . . where

[there is] an extremely tenuous connection to the estate[.]"  *See Wolverine Radio,* 930 F.2d at

1142.

## V. Discussion of the parties' arguments

### A. Solon's earlier admission of jurisdiction

Allard argues that Solon's motion to dismiss should be denied because Solon previously

admitted that the Court has subject matter jurisdiction.  Solon did this by admitting, in the Civil

Rule 26(f) Report filed by the parties on March 12, 2008, that "[t]his is a core proceeding."[22]

Solon's earlier admission does not preclude his jurisdictional challenge now.  The parties

cannot create subject matter jurisdiction by mere admission or stipulation.  "[F]ederal courts are

courts of limited jurisdiction and have a continuing obligation to examine their subject matter

jurisdiction throughout the pendency of every matter before them.  Parties can neither waive nor

consent to subject matter jurisdiction[.]"  *Michigan Employment Sec. Comm'n v. Wolverine*

*Radio Co., Inc.*, 930 F.2d 1132, 1137-38 (6th Cir. 1991)(citation and footnote omitted); *see also*

*Spierer v. Federated Dept. Stores, Inc.* (*In re Federated Dept. Stores, Inc.*), 328 F.3d 829,

833)(6th Cir. 2003)("'parties may not waive . . . or consent to subject matter jurisdiction which a

federal court does not properly have.'")(quoting*Universal Consol. Cos. v. Bank of China,* 35 F.3d

243, 247 (6th Cir.1994)).  Rather, "[i]f the court determines at any time that it lacks subject-

matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).[23]

---

[22]  *See* Report of Parties' Rule 26(f) Conference (Docket # 24) at 3; Trustee's Resp. in Opp'n to Def. Richard A. Solon's Mot. to Dismiss at 2, 4 (Docket # 66).

[23]  This rule applies while the case is pending, but it may not apply after a final judgment is entered and any direct appeal from the judgment has ended.  *See generally Travelers Indemnity Co. v. Bailey*, __ U.S. __, 129 S.Ct. 2195, 2205-06 (2009)(stating general rule that "subject matter jurisdiction . . . may not be attacked collaterally," and discussing exceptions to that rule).

## B.  The "core" categories of jurisdiction — "arising under" or "arising in"

It is undisputed that the claims Allard asserts in this adversary proceeding are not property of the bankruptcy estate, and that no money recovered on the claims will be property of the estate.  Allard pursues the claims on behalf of the ERISA Plan, not the bankruptcy estate.

Allard admits that the ERISA Plan is a separate and distinct entity from the Debtor, who sponsored and administered the Plan, and therefore is a separate and distinct entity from the Debtor's bankruptcy estate.[24]  *See, e.g.,* 29 U.S.C. § 1132(d)(1)("An employee benefit plan may sue or be sued under this subchapter as an entity."); 29 U.S.C. § 1103(c)(1)(stating that, with exceptions not applicable here, "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan").

Nevertheless, Allard argues that this adversary proceeding is a civil proceeding "arising under title 11" or "arising in a case under title 11," and is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(O).  Under those two sub-sections, core proceedings include, respectively, "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship."

Allard points out that 11 U.S.C. § 704(a)(11) imposes a duty on Chapter 7 trustees in a case such as this, to act as the administrator of the debtor's employee benefit plan.  Because of this, Allard argues, an adversary proceeding filed by the trustee in his capacity as plan

---

[24]  Allard admits, for example, that "an ERISA plan is typically a trust that is viewed separate from the debtor itself." Trustee's Resp. in Opp'n to Def. Solon's Mot. to Dismiss (Docket # 66) at 6.

administrator is a "matter concerning the administration of the estate" within the meaning of 28 U.S.C. § 157(b)(2)(A) and therefore a core proceeding.[25]  Relying on *In re Tom's Foods, Inc.,* 341 B.R. 82 (Bankr. M.D. Ga. 2006), a pre-BAPCPA Chapter 11 case that concerned  attorney fees and not subject matter jurisdiction, Allard argues that whether a debtor is liquidating or reorganizing, the administration of an ERISA plan is an integral part of dealing with the debtor's business.  From this proposition, Allard argues that a lawsuit filed as part of administering an ERISA plan is a core proceeding under 28 U.S.C. § 157(b)(2)(A).[26]  Allard also argues that he has had to advance estate funds to pay for Plan administration activities, including prosecuting this adversary proceeding, and that this has "affected 'the liquidation of the assets of the estate.'"  As a result, Allard says, this adversary proceeding also is core under 28 U.S.C. § 157(b)(2)(O).[27]

Solon argues that this adversary proceeding does not fit within any of the "core" jurisdictional categories.[28]  Solon further argues that the Trustee's prosecution of this adversary proceeding, in his capacity as administrator of the ERISA Plan, does not fit within 28 U.S.C. §§ 157(b)(2)(A) or 157(b)(2)(O) or any other of the types of core proceedings listed in 28 U.S.C. §§ 157(b), because administration of the ERISA Plan is not the same as administration of the bankruptcy estate.[29]

---

[25] *Id*. at 5-8.

[26] *Id*. at 6.

[27] *Id.* at 7.

[28] Reply Br. in Supp. of Def. Solon's Mot. to Dismiss (Docket # 89) at 4.

[29] Mem. in Supp. of Def. Solon's Mot. to Dismiss (Docket # 57) at 8.

The Court concludes that this is not a core proceeding. It is not a proceeding "arising under title 11," nor is it one "arising in a case under title 11." This proceeding is not one "arising under title 11" because it does not "involve a cause of action created or determined by a statutory provision of title 11." *See Bliss Technologies, Inc. v. HMI Indus. Inc.* (*In re Bliss Technologies, Inc.,*) 307 B.R. 598, 602 (Bankr. E.D. Mich. 2004)(quoting *Wolverine Radio*, 930 F.2d at 1144). The cause of action in Count I is based on ERISA. It was created and will be determined by federal non-bankruptcy law, rather than any provision of title 11. Count I is a claim for breach of fiduciary duties under certain provisions of ERISA, namely 29 U.S.C. §§ 1132, 1104, and 1109(a). Count I alleges that Defendants breached certain fiduciary duties imposed by ERISA, in 29 U.S.C. § 1104, for which 29 U.S.C. § 1109(a) provides remedies.

Count II of the Complaint, which to date has been dismissed as to Solon but not as to the other defendants,[30] is a breach of contract claim based on Michigan common law, not title 11. Thus, neither count in the Complaint "involves a cause of action created or determined by a statutory provision of title 11." So neither count is a proceeding "arising under title 11."

This proceeding also is not one "arising in a case under title 11," because the claims asserted are not claims that "by their very nature, could only arise in bankruptcy cases." *See Bliss Technologies,* 307 B.R. at 602 (quoting *Wolverine Radio*, 930 F.2d at 1144); s*ee also GAF Holdings, LLC v. Rinaldi* (*In re Farmland Indus., Inc.*), 567 F.3d 1010, 1018 (8th Cir. 2008)(same). Allard's ERISA and contract claims, of course, can exist outside of bankruptcy. They "do not fit into the narrow category of administrative matters ["such as allowance and disallowance of claims, orders in respect to obtaining credit, determining the dischargeability of

---

[30] *See* discussion in footnote 17 of this opinion.

13

debts, discharges, confirmation of plans, orders permitting the assumption or rejection of contracts,"] which have no existence outside of the bankruptcy." *See GAF Holdings*, 567 F.3d at 1018 (internal quotation marks and citations omitted).

Under Sixth Circuit case law, because this adversary proceeding does not meet either the "arising under" or "arising in" jurisdictional requirements of 29 U.S.C. § 1334(b), it necessarily cannot fall within 28 U.S.C. § 157(b)(2)(A) or §157(b)(2)(O), the two statutory *examples* of core proceedings on which Allard relies. *See Wolverine Radio*, 930 F.2d at 1144 ("if the proceeding does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of the bankruptcy, then it is not a core proceeding")(citing *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 97 (5th Cir. 1987)).

### C. Non-core ("related to") jurisdiction

### 1. The parties' arguments

Solon argues that this adversary proceeding is not "related to" the bankruptcy case within the meaning of § 1334(b), because the claims in the Complaint are not property of the bankruptcy estate; nor will any funds the Trustee recovers on the claims be property of the estate. As a result, Solon argues, no such funds will be available for distribution to creditors of the estate.[31] "Instead, any such funds will be paid directly to the ERISA Plan for the benefit of non-debtor employees [of the Debtor]."[32] Therefore, Solon argues, resolution of the claims in the Complaint will not have any effect on the estate being administered in this bankruptcy case.[33]

---

[31] Mem. in Supp. of Def. Solon's Mot. to Dismiss (Docket # 57) at 2, 9-10.

[32] *Id.* at 2, 9-10.

[33] *Id.* at 2; *see also id.* at 9-10.

14

Solon argues that 11 U.S.C. § 704(a)(11) does not create jurisdiction.[34]  According to Solon, § 704(a)(11) gives the Trustee *standing* to pursue the claims in the Complaint, but does not give the bankruptcy court jurisdiction over those claims.[35]  Solon argues that the Trustee could have brought such claims in the United States District Court, but not in the bankruptcy court.  The parties agree that subject matter jurisdiction would exist if Allard had filed his ERISA breach-of-fiduciary duty claim in the United States District Court.  This is so under ERISA's own jurisdictional provisions, 29 U.S.C. §§ 1132(e)(1) and 1132(f),[36] and also under the general federal-question jurisdiction statute, 28 U.S.C. § 1331.[37]  But these statutes do not give jurisdiction to bankruptcy courts.

Allard argues that if this is not a core proceeding, it is a "related to" proceeding, because it satisfies the *Pacor* "conceivable effect" test for "related to" jurisdiction.[38]  Allard notes that:

> • he has "employed and the Court has approved the employment of accountants, general counsel and special counsel to assist [him] in, among other things, the performance of [his] duties [as Plan administrator under] 11 U.S.C. § 704(a)(11) (the 'Employee Benefit Plan Services');"
>
> • "approximately 25% of [his] overall time as Bankruptcy Trustee has been devoted to administering the Plan and overseeing the pending [a]dversary [p]roceeding;"

---

[34]  Reply Br. in Supp. of Def. Solon's Mot. to Dismiss (Docket # 89) at 4.

[35]  *Id.*

[36]  Under § 1132(e)(1), in an action by a plan fiduciary against another fiduciary for relief under 29 U.S.C. § 1109, for breach of fiduciary duty, "the district courts of the United States shall have exclusive jurisdiction."  *See* 29 U.S.C. §§ 1132(e)(1), 1132(a)(2), 1109(a).  Section 1132(e)(1) is further discussed in Section VI of this opinion.

[37]  Section 1331 says that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Count I of Allard's complaint, the ERISA breach-of-fiduciary duty claim, arises under a law of the United States — namely, ERISA.

[38]  Trustee's Supplemental Br. Re. Def.'s Mot. to Dismiss (Docket # 121) at 7-10.

- he "has incurred approximately $69,000 of professional fees and expenses in the performance of Employee Benefit Plan Services (excluding Trustee services);"

- "[a]pproximately $48,000 of Estate funds have been expended to date and approximately $18,700 remains due and unpaid;" and

- "[he] expects to continue to expend Estate funds until the litigation against the Plan fiduciaries is concluded, the allocation of funds among the Plan and the estates is distributed, distributions are made to Plan beneficiaries and thereafter, the [employee benefit plans are terminated]."[39]

Allard argues that his use of estate funds was proper and necessary because the Plan expressly permits the Employer (the Debtor) to pay the fees and expenses of administering the Plan, and the Plan itself was "effectively bankrupt."[40] Allard alleges that the sole asset of the Plan he could use was a checking account with a balance of $7,328.68. Therefore, he "was forced from the very beginning to dip into the assets of the Debtor's Estate to pay for the expenses and fees for administering the Plan, and then later for expenses and fees relating to [the adversary proceeding]."[41]

Allard further argues that the outcome of this adversary proceeding will affect the estate in the future. The outcome will determine the Plan's ability to reimburse the estate for the funds the estate has advanced and will advance in the future for ERISA Plan administrative work.[42]

---

[39] Aff. of David W. Allard (Ex. 1 to Docket # 121) at 2 ¶ 5; 5 ¶¶ 10 and 12.

[40] Trustee's Supplemental Br. Re. Def.'s Mot. to Dismiss (Docket # 121) at 2.

[41] *Id.*

[42] *Id.* at 8. Allard also argues that this adversary proceeding is benefitting the bankruptcy estate "by ensuring that the Employer [Debtor] . . . is not a defendant, an almost certain result had one of the Plan participants/beneficiaries (or the Department of Labor) initiated suit." *Id*. at 3. According to Allard, this adversary proceeding is preventing the estate from incurring legal fees and expenses associated with defending against claims of the Plan participants, and the resulting depletion of estate assets. *Id*. at 4. The Court concludes, however, that this argument is too speculative to serve as a basis

(continued...)

Solon responds that Allard's payment with estate funds of the expenses he has incurred in fulfilling his duties under 11 U.S.C. § 704(a)(11), including expenses incurred in prosecuting this adversary proceeding, cannot create bankruptcy court jurisdiction.[43] This is so, Solon argues, because Allard's decisions to commence this adversary proceeding, to deplete estate assets to fund the litigation, and later to reimburse the estate with any funds recovered by the Plan, are all discretionary.[44] According to Solon, Allard was not required to file this adversary proceeding, but instead could have left it to the ERISA Plan's participants to do so. And, Solon argues, Allard could have used only Plan assets rather than bankruptcy estate assets to prosecute this adversary proceeding. Solon argues that Allard had no obligation to spend bankruptcy estate funds to perform his duties as ERISA Plan administrator.[45]

According to Solon, "it would be entirely improper to permit [Allard] to unnecessarily deplete the assets of the Bankruptcy Estate in pursuit of litigation that will in no way directly benefit the estate, while simultaneously relying upon the impact of such actions on the Bankruptcy Estate to support a basis for bankruptcy court jurisdiction."[46] Solon claims that

---

[42](...continued)
for finding "related to" jurisdiction.

[43] Mem. in Supp. of Def. Solon's Mot. to Dismiss (Docket # 57) at 7; Def. Solon's Supplemental Br. in Supp. of Mot. to Dismiss (Docket # 119) at 2-6.

[44] Def. Solon's Supplemental Br. in Supp. of Mot. to Dismiss (Docket # 119) at 2-6.

[45] *Id.* at 2-3.

[46] *Id.* at 4.

17

allowing Allard's discretionary acts to create subject matter jurisdiction would impermissibly allow Allard to "write his own 'jurisdictional ticket.'"[47]

### 2. The Court finds "related to" jurisdiction

Although the Court lacks "arising under" or "arising in" jurisdiction, the Court concludes that it has "related to" jurisdiction over this adversary proceeding. The *Pacor* test is satisfied — that is, that the outcome of this adversary proceeding "could conceivably have [an] effect on the estate being administered in bankruptcy." This is so because (1) Trustee Allard has reasonably advanced, and in the future likely will reasonably advance, funds of the bankruptcy estate to pay (a) attorney fees, accountant fees, and expenses for performing the Trustee's duty to administer the ERISA Plan, not including the prosecution of this adversary proceeding; and (b) attorney fees, expert witness fees, and other litigation expenses relating to this adversary proceeding; and (2) to the extent Allard is successful in recovering on these claims for the ERISA Plan, the Plan will reimburse the bankruptcy estate for the fees and expenses the estate has advanced.

The ultimate distribution to creditors of the bankruptcy estate, of course, will be directly affected by the extent to which the ERISA Plan reimburses the bankruptcy estate for the fees and expenses the estate has paid to enable the Trustee to administer the Plan, including prosecution of this adversary proceeding. Thus, "the outcome of [this adversary] proceeding could conceivably have an "effect on the estate being administered in bankruptcy," within the meaning of the *Pacor* test.

---

[47] *Id*. at 5-6.

### a. First premise — Trustee's use of estate funds to pay for ERISA Plan administration

The Court's conclusions above are based on several premises, which bear some discussion. A first premise is that the Trustee has in fact advanced funds of the bankruptcy estate, and may do so in the future, to pay (1) attorney fees, an expert witness fee, and other litigation expenses relating to this adversary proceeding; and (2) attorney fees, accountant fees, and other expenses for performing the Trustee's duty to otherwise administer the ERISA Plan. This premise is undisputed, and is established by Allard's two affidavits filed in this adversary proceeding. As of July 15, 2009, the date of his second affidavit, Allard had actually paid some $48,000 of bankruptcy estate funds for professional fees and expenses for work done in administering the ERISA Plan. This is a partial payment of the approximately $69,000 in such fees incurred as of that date. And Allard will continue to incur further attorney fees and expenses to administer the ERISA Plan.[48]

Allard's affidavit first describes the services performed for the ERISA Plan by the *accountants* Allard retained with the Court's approval:

> 5. That in accordance with 11 U.S.C. § 704(a)(11), I have employed and the Court has approved the employment of accountants, general counsel and special counsel to assist me in, among other things, the performance of my duties pursuant to 11 U.S.C. § 704(a)(11) (the "Employee Benefit Plan Services").
>
> 6. That fee applications have been filed by the Trustee's **accountants** describing Employee Benefit Plan Services. Fees have been approved by the Court for such services which include but are not limited to the following;
>
> > a. Reviewing and preparing records requested in letter dated September l0, 2007 from the Department of

---

[48] Aff. of David W. Allard (Ex. 1 to Docket # 121) at ¶¶ 5-7, 11-12.

Labor in relation to Debtor's Employee Profit Sharing 401(k) Plan. Said accountants reviewed, copied, and indexed numerous records from January 1, 2004 to present related to the plan. Information that was provided included plan description and amendments; Fidelity Bond Policy and proof of payments; determination letters; Form 5500's and audited financial statements; payroll records and participant salary deferral election notices; employee and employer contribution records; cancelled checks and bank statements; loan agreements and schedules;

      b.      Reviewing accounting records and responding to notices received from the Internal Revenue Service regarding federal withholding taxes due related to the Deferred Compensation Plan;

      c.      Preparing 401(k) disbursement schedule and issuing 2006 Form 1099R to recipients;

      d.      Review of accounting records and responding to notices received from the Internal Revenue Service regarding federal withholding taxes due related to Compensation 401(k) Plan;

      e.      Review of records discussions with the Department of Labor necessary to prepare Form 5500's for Debtor's Deferred Compensation 401(k) Plan, Voluntary Employee Benefit Plan, and Premium Conversion Plan;

      f.      Reviewed, organized, and coordinated the relocation of numerous records located at storage facility as requested by Trustee;

      g.      Various conference calls, meetings Trustee and Trustee's counsel regarding above matters.[49]

Next, Allard's affidavit describes the services performed for the ERISA Plan by Allard's *general counsel*. (This does not include the work done by Trustee Allard's special counsel, The Miller Law Firm, which is prosecuting this adversary proceeding for the Trustee.):

---

[49] *Id.* at ¶¶ 5, 6.

20

7.　That fee applications have been filed by the Trustee's general counsel describing Employee Benefit Plan Services. Fees have been approved by the Court for such which include but are not limited to the following:

. . .

b.　Consultation with the Trustee and the Trustee's special litigation counsel regarding claims to be asserted in lawsuits against the Debtor's officers and directors, as well as claims to be (asserted) against plan fiduciaries of the Debtor's employee benefit plans;

c.　Consultation with the Trustee regarding various pension issues;

d.　Assisted Trustee to review, organize and copy substantial documentation requested by the Department of Labor relating to the Debtor's employee benefit plans;

e.　Responded to inquiries from creditors and attorneys regarding the status of the case and specific matters within the case, including but not limited to payroll and other tax returns, Debtor's deferred compensation plan, chapter 11 administrative claims and 401(k) roll overs;

f.　Applicant consulted with the Trustee regarding various pension issues. Applicant assisted the Trustee to review, organize and copy substantial documentation requested by the Department of Labor relating to the Debtor's employee benefit plans. Applicant had numerous conversations with the brother of a former employee of the Debtor currently living Germany who was attempting to obtain a liquidation of his brother's 401(k) account with the Debtor;

g.　Applicant consulted with the Trustee, and the Trustee's special litigation counsel, to investigate possible claims against the Debtor's officers, directors, and professionals. As a result of this investigation, an adversary proceeding has been commenced against the Debtor's officers and directors, and a second adversary proceeding has been commended against certain plan fiduciaries of the Debtor's employee benefit plans;

21

> h.      Applicant consulted with the Trustee regarding various pension issues. Applicant assisted the Trustee to review, organize and copy substantial documentation requested by the Department of Labor relating to the Debtor's employee benefit plans;
>
> i.      Applicant responded to inquiries form creditors and attorneys regarding the status of the case and specific matters within the case, including but not limited to . . . payroll tax returns, 401(k) plan participation and statements, chapter 11 administrative claims, and the filing of proofs of claim.[50]

### b.  Second premise — Trustee's authority to use estate funds to pay for ERISA Plan administration

A second premise underlying the Court's conclusions above is that the Trustee is *allowed* to use funds from the bankruptcy estate to advance such ERISA Plan-related fees and expenses. This premise is established in at least two ways.  First, Allard's payments to date have been authorized by orders of the Court that approved interim fee applications of the professionals involved.[51]  The interim fee applications adequately disclosed that they included fees for ERISA-Plan administration services.[52]  No objections were filed to any of these fee applications, and the Court reviewed them and granted them.

Second, such advances of estate funds to pay for ERISA Plan administration are authorized by the combination of §§ 327 and 330(a) of the Bankruptcy Code, even though the ERISA Plan and its assets are not part of the bankruptcy estate.  Section 327(a) permits the

---

[50]  *Id.* at ¶ 7.

[51]  *See* the interim fee orders entered in Case No. 06-43993, at Docket ## 583-585, 680-682, 729-731, 734, 735, and 744-747.

[52]  *See* the interim fee applications in Case No. 06-43993, at Docket ## 574-576, 662-664, 719-721, 736-739.

Chapter 7 trustee, with the Court's approval, to employ "attorneys, accountants, . . . or other professional persons . . . to represent or assist the trustee in carrying out the trustee's duties under this title."[53]  As discussed earlier, the Chapter 7 trustee's duties include the duty under § 704(a)(11) to "perform the obligations required of the administrator" of the Debtor's ERISA Plan.  So Allard, Trustee, had authority under § 327(a), with the Court's approval, to employ professionals to represent and assist him in administering the ERISA Plan.

Section 330(a)(1), in turn, permits the Court to award to professional persons "employed under section 327," "reasonable compensation for actual, necessary services rendered by the . . . professional person . . .; and reimbursement for actual, necessary expenses."[54]  Section 330(a)(3)

---

[53] Section 327(a) provides, in full, that:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

[54] Section 330(a) provides, in full, that:

> (a)(1)   After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103–
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.
> (2)       The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the

(continued...)

23

trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3)     In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--

(A)     the time spent on such services;

(B)     the rates charged for such services;

(C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A)   Except as provided in subparagraph (B), the court shall not allow compensation for--

(i)     unnecessary duplication of services; or

(ii)     services that were not--

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

(B) In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

(continued...)

24

provides that in determining the amount of such "reasonable compensation," the Court must "consider the nature, the extent, and the value of such services, taking into account all relevant factors," including "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title." 11 U.S.C. § 330(a)(3)(C).

A Chapter 7 trustee's performance of his duty to administer an ERISA plan under § 704(a)(11) is "beneficial toward the completion of" the bankruptcy case, within the meaning of § 330(a)(3)(C), because the case cannot be "completed" without such performance. Similarly, a trustee's performance of this duty is also "necessary to the administration of" the bankruptcy case, within the meaning of § 330(a)(3)(C), because "administration of" the "case" includes the trustee's performance of all of his duties under § 704(a).[55] In this sense, the phrase

---

[54](...continued)
> (5)     The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate.

> (6)     Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.

> (7) In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326.

11 U.S.C. § 330(a).

[55]  Section 704(a) provides, in full, that:

> (a) The trustee shall

> (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible

(continued...)

[55](...continued)

with the best interests of parties in interest;

(2) be accountable for all property received;

(3) ensure that the debtor shall perform his intention as specified in section 521 (2)(B) of this title;

(4) investigate the financial affairs of the debtor;

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

(6) if advisable, oppose the discharge of the debtor;

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

(8) if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires;

(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee;

(10) if with respect to the debtor there is a claim for a domestic support obligation, provide the applicable notice specified in subsection (c);

(11) if, at the time of the commencement of the case, the debtor (or any entity designated by the debtor) served as the administrator (as defined in section 3 of the Employee Retirement Income Security Act of 1974) of an employee benefit plan, continue to perform the obligations required of the administrator; and

(12) use all reasonable and best efforts to transfer patients from a health care business that is in the process of being closed to an appropriate health care business that

      (A) is in the vicinity of the health care business that is closing;

(continued...)

26

"administration of" the "case" as used in § 330(a)(3)(C) is broader than the phrase

"administration of **the estate**," as the latter phrase is used in 28 U.S.C. § 157(b)(2)(A). As

discussed in part V-B of this opinion, the latter statute lists as one of the examples of "core"

proceedings, "matters concerning the administration of the estate."

Section 330(a)(4)(A)(ii) says that the Court "shall not allow compensation for --"

> (ii) services that were not--
>> (I) reasonably likely to benefit the debtor's estate; or
>> (II) necessary to the administration of the case.

11 U.S.C. § 330(a)(4)(A)(ii). Under this subsection, professional services performed to assist the

trustee in meeting his statutory duty to administer the debtor's ERISA plan are "necessary to the

administration of the case," even though in a given case they might not be "reasonably likely to

benefit the debtor's estate." Therefore, § 330(a)(4)(A)(ii) does not render such services non-

compensable.

Based on these statutory provisions, then, the Court may allow estate funds to be paid to

professionals for assisting the Chapter 7 trustee to perform his statutory duty to administer the

debtor's ERISA plan. And this is so even though the assets of the ERISA plan are not assets of

the bankruptcy estate.

One can certainly argue that normally, the Court should require that the cost of the

Chapter 7 trustee's administering the ERISA plan be paid for with the plan's assets, rather than

---

[55](...continued)
> (B) provides the patient with services that are
> substantially similar to those provided by the health care
> business that is in the process of being closed; and
>
> (C) maintains a reasonable quality of care.

11 U.S.C. § 704(a).

bankruptcy estate assets. In this case, however, it has not been possible to do so, at least not yet. Allard's affidavit establishes that to date the ERISA Plan's assets available to fund his plan-administration work have been no more than $8,356.68.[56] This is far short of the more than $69,000 in fees and expenses the trustee has incurred so far for ERISA plan administration.

At least one court has permitted professional fees for ERISA plan administration to be paid from the bankruptcy estate. *In re Tom's Foods, Inc.,* 341 B.R. 82, 89-90 (Bankr. M.D.Ga. 2006) was a Chapter 11 case in which the debtor-in-possession's counsel "provided services to [the d]ebtor as the administrator of [the debtor's ERISA qualified] pension plan[,]" and filed a fee application for those services. The pension plan was "substantially underfunded" and had insufficient funds with which to pay for the services. *Id.* Although the *Tom's Foods* case was filed before the effective date of BAPCPA, and therefore was not governed by BAPCPA, the court looked to new § 704(a)(11) for guidance. The court reasoned that under § 704(a)(11), "'dealing with the debtor's employee benefit plans, whether the debtor is liquidating or reorganizing, is an integral part of dealing with the debtor's business.'" *Id*. at 90 (quoting 7 *Collier on Bankruptcy* ¶ 1106.03[7] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2005)). The court held that the debtor-in-possession's counsel was "[entitled to be compensated from [the d]ebtor's bankruptcy estate . . . for services provided to [the d]ebtor as the administrator of [the d]ebtor's pension plan." *Id.*

As noted earlier, Defendant Solon argues that Trustee Allard was not required to incur fees and expenses to prosecute this adversary proceeding, because he was not required to prosecute this adversary proceeding at all, as part of his duties as ERISA Plan administrator.

---

[56] Aff. of David W. Allard (Ex. 1 to Docket # 121) at ¶ 4 and 2 n.2 (LaSalle Bank checking account balance of $7,328.68 plus Comerica Securities, Inc. account valued at "less than $1,028").

Instead, Solon argues, Allard could have left it to the individual ERISA Plan participants to file suit.

This argument has at least two flaws. First, the $48,000 in fees and expenses that Allard has paid to date with bankruptcy estate funds, and the $69,000 in fees and expenses incurred to date, for ERISA Plan administration, do not include any attorney fees for Allard's special counsel who has been prosecuting this adversary proceeding. As described in Allard's affidavit, quoted in part V-C-2-a of this opinion, some of the fees and expenses are for work Allard's general counsel and accountant did relating to this adversary proceeding. But it appears from Allard's affidavit and from the interim fee applications referred to above that a substantial part of the fees and expenses incurred to date are for plan administration work *other than* work on this adversary proceeding. Such fees and expenses would have been incurred even if Allard had not filed this adversary proceeding.

Second, a strong argument can be made that under ERISA, a plan administrator *does* have a fiduciary duty to pursue valuable claims that the ERISA Plan has against other persons. *See generally Harris v. Koenig*, 602 F.Supp.2d 39, 54-55, 65, 65 n.26 (D.D.C. 2009)(noting, among other things, that "[t]he duties of loyalty and prudence mandated in Section 404(a) of ERISA [29 U.S.C. § 1104(a)] include the 'duty to take reasonable steps to realize on claims held in trust.'")(citation omitted). Such an argument is even stronger in a case like this one, where it appears that the only ERISA plan fiduciaries *other than* the plan administrator are the very targets of the Plan's claims, who obviously cannot be expected to pursue such claims for the Plan. (As stated in part II of this opinion, Allard's complaint alleges that the Defendants in this case were trustees of the Plan.)

Solon also argues that Allard could have used only Plan assets, rather than any bankruptcy estate assets, to prosecute this adversary proceeding. And, more broadly, Solon appears to argue that Allard had no obligation to spend bankruptcy estate funds to perform *any* of his duties as ERISA Plan administrator.

These arguments ignore the fact that to date the available Plan assets have been insufficient to pay for the ERISA Plan administration work that Bankruptcy Code § 704(a)(11) required the Trustee to do. Even in such a situation, the Trustee still has the statutory duty to administer the ERISA plan. As the above discussion of Bankruptcy Code §§ 327 and 330 shows, the reasonable professional fees and expenses incurred by the Trustee to perform his § 704(a)(11) duties *may* be paid by the bankruptcy estate, at least where the ERISA Plan assets are insufficient to pay them. Indeed, in that situation, such fees and expenses *must* be paid by the bankruptcy estate, because there is no other way to pay them. Congress surely did not intend to force Trustees and their professionals to do this § 704(a)(11) work for free, when there are sufficient funds to pay them in the bankruptcy estate (but not in the ERISA Plan).

### c. Third and fourth premises — reimbursement of estate from any recovery by the ERISA Plan in this adversary proceeding

A third premise underlying the Court's conclusion about "related to" jurisdiction is that unless the Trustee is successful in obtaining a recovery in this adversary proceeding, the ERISA Plan will not be able to reimburse the estate for the funds it has advanced. And a related fourth premise is that to the extent the Trustee is successful in obtaining a recovery in this adversary proceeding, the ERISA Plan will in fact reimburse the estate for the funds it has advanced. As discussed above, the third premise is established by the fact that the ERISA Plan has available

assets, other than the claims in this adversary proceeding, of no more than $8,356.68, far less than the $69,000 in fees and expenses already incurred.

The fourth premise is established as well. As noted above, the Court has granted interim fee applications filed to date by the Trustee's professionals, and thereby has authorized payment of estate funds for ERISA Plan administration work. Those interim fee orders, however, are still subject to the Court's final review before the bankruptcy case is concluded. As part of that final review of the fee applications under Bankruptcy Code § 330(a), and based also on the Court's authority under Bankruptcy Code § 105(a), the Court will require that any recovery the ERISA Plan obtains in this adversary proceeding be used first to reimburse the bankruptcy estate for all fees advanced by the estate for plan administration work, including but not limited to prosecution of this adversary proceeding.[57] And it is possible that the cost of a significant part of that reimbursement of the estate will be paid by the Defendants, rather than coming out of the ERISA Plan's damages recovery for the benefit of its participants. This is so because of ERISA's fee-shifting statute. Under that statute, 29 U.S.C. § 1132(g)(1),[58] if Allard prevails in this adversary proceeding, the Court "in its discretion may allow a reasonable attorney's fee and costs of action" against the Defendants.

In addition to this Court's independent authority to require that the ERISA Plan to reimburse the bankruptcy estate for fees and expenses the estate has paid for plan administration

---

[57] Section 105(a) provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In this case, requiring such reimbursement of the estate by the ERISA Plan would be necessary and appropriate to carry out the provisions of both §§ 704(a)(11) and 330(a) of the Bankruptcy Code, among other possible provisions.

[58] Section 1132(g)(1) states, in full, that: "In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

31

work, the ERISA Plan itself both permits and requires such reimbursement.  Paragraphs 2.8 [59]

and 10.6[60] of the Plan permits the plan administrator to pay for the costs of administering the

Plan and of litigating this adversary proceeding, and requires that the Plan reimburse for such

expenses.

### d.  Conclusion regarding "related to" jurisdiction

Based on the discussion above, the Court concludes that the outcome of this adversary

proceeding will affect the bankruptcy estate's ability to obtain reimbursement from the ERISA

Plan — either positively or negatively — for the fees and expenses the estate has paid for the

---

[59]  Article III, Paragraph 2.8 of the Plan, captioned "PAYMENT OF EXPENSES" provides:

> All expenses of administration may be paid out of the Trust Fund **unless paid by the Employer**.  Such expenses shall include any expenses incident to the functioning of Administrator, or any person or persons retained or appointed by any Named Fiduciary incident to the exercise of their duties under the Plan, including, but not limited to, fees of accountants, counsel, Investment Managers, agents (including nonfiduciary agents) appointed for the purpose of assisting the Administrator or Trustee in carrying out the instructions of Participants as to the directed investment of their accounts (if permitted) and other specialists and their agents, the costs of any bonds required pursuant to Act Section 412, and other costs of administering the Plan.  **Until paid, the expenses shall constitute a liability of the Trust Fund.**

(Ex. 3 of Docket # 121)(emphasis added).  As successor to the Employer (the Debtor) and as successor to the Admininstrator, Trustee Allard has the benefit of this Plan provision.

[60]  Article X, Paragraph 10.6 of the Plan, captioned "LEGAL ACTION," provides:

> In the event any claim, suit, or proceeding is brought regarding the Trust and/or Plan established hereunder to which the Trustee, the Employer **or the Administrator** may be a party, and such claim, suit, or proceeding is resolved in favor of the Trustee, the Employer or **the Administrator**, they shall be entitled to be reimbursed from the Trust Fund for any and all costs, attorney's fees, and other expenses pertaining thereto incurred by them for which they shall have become liable.

(Emphasis added).

32

Trustee's Plan-administration work. This in turn will affect — either positively or negatively — the amount of the distributions that creditors of the bankruptcy estate will receive. As a result, the "conceivable effect" test of *Pacor* is easily met in this case, so the Court has "related to" subject matter jurisdiction.

## VI.  ERISA's jurisdictional statute, 29 U.S.C. § 1132(e)(1), does not affect the bankruptcy court's subject matter jurisdiction.

As noted in part V-C-1 of this opinion, and as the parties agree, ERISA's jurisdictional statute, 29 U.S.C. § 1132(e)(1), applies to Allard's ERISA breach-of-fiduciary-duty claim in Count I of the Complaint.[61]  That statute says that in such an action, "the district courts of the United States shall have exclusive jurisdiction," while in certain other types of ERISA actions, "[s]tate courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction."

Because this statute gives the United States district courts "exclusive jurisdiction" of ERISA claims like Allard's, one might question whether bankruptcy courts are divested of any jurisdiction they might otherwise have to hear such claims. As the parties agree and have pointed out, however, the Sixth Circuit has answered this question in the negative.[62]  In *Browning v. Levy*, 283 F.3d 761, 779 (6th Cir. 2002), the Sixth Circuit explained:

> But the exclusive jurisdiction of the district courts over certain
> ERISA claims does not preclude such claims from being brought in

---

[61] This is not readily apparent from reading only 29 U.S.C. § 1132(e)(1), but it is clear from the combination of 29 U.S.C. §§ 1132(e)(1), 1132(a)(2), and 1109(a).  And both Allard and Solon agree that this is so.  *See* Pl's. Suppl. Br. (Docket # 140) at 1; Def's. Suppl. Br. (Docket # 139) at 2.

[62] *See* Pl's. Suppl. Brf (Docket # 140) at 1; Def's. Suppl. Brf. (Docket # 139) at 3.  As Solon has pointed out, at least one bankruptcy court outside the Sixth Circuit has held that ERISA's § 1132(e)(1) does divest bankruptcy courts of jurisdiction.  *See In re Tarasi & Tighe,* 82 B.R. 795, 800 (Bankr. W.D. Pa. 1988).

33

> bankruptcy proceedings, because the "bankruptcy court is not a free standing court," but rather "a 'unit' of the district court." 28 U.S.C. § 151. Because the bankruptcy court is a unit of the district court, and therefore able to share in the district courts' exclusive jurisdiction over ERISA claims, the bankruptcy court has no less power to hear ERISA claims than it does any other non-core bankruptcy proceeding.

*Id*. (citations omitted).

The Sixth Circuit's holding in *Browning v. Levy* is further supported by Congress's use of the same kind of "exclusive jurisdiction" language in the *bankruptcy* jurisdiction statute, 28 U.S.C. § 1334(a). That statute says that "the district courts shall have original and exclusive jurisdiction of all cases under title 11." But Congress obviously did not intend that "exclusive jurisdiction" language to deprive bankruptcy courts of jurisdiction, because 28 U.S.C. § 157(a) expressly permits "each district court" to refer "any or all cases under title 11" to "the bankruptcy judges for the district." The bankruptcy judges in each district, in turn, "constitute a unit of the district court to be known as the bankruptcy court for that district." *See* 28 U.S.C. § 151. This supports the Sixth Circuit's holding in *Browning v. Levy*, that the ERISA statute's granting of exclusive jurisdiction to the "district courts" does not exclude the bankruptcy courts.

## VII. Conclusion

Because the Court has "related to" subject matter jurisdiction of this adversary proceeding, the Court will enter an order denying Defendant Solon's motion to dismiss.

**Signed on November 13, 2009**

**/s/ Thomas J. Tucker**
**Thomas J. Tucker**
**United States Bankruptcy Judge**

For Publication